<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIO R.,<br><br>            Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Civil Action No. 2:22-CV-00726<br><br>**OPINION**<br><br>November 17, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Mario R.'s ("Plaintiff")[1] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Meryl L. Lissek's ("ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by his first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

**I.     PROCEDURAL AND FACTUAL HISTORY**

   **A. Procedural History**

On July 9, 2018, Plaintiff filed for DIB, alleging disability beginning October 2, 2016, due to degenerative disc disease; coronary artery disease; diabetes mellitus; hernia; depression; anxiety disorder; and learning disorder.  (D.E. 4-2 (Administrative Record ("R.")) at 15, 18, 45–83, 109, 389, 418–27.)  The state agency denied Plaintiff's claim initially on October 26, 2018, and upon reconsideration on March 8, 2019.  (R. 132–37, 142–44.)  Plaintiff received a hearing before ALJ Lissek on May 6, 2021 (R. 44–83), and the ALJ issued a partially favorable decision for Plaintiff on May 26, 2021.  (R. 9–37.)  The Appeals Council denied the request for review on July 22, 2021, making the ALJ's decision the final decision of the Commissioner of Social Security.  (R. 1–8.)  Plaintiff subsequently filed the instant appeal in this Court.  (D.E. 1.)  The parties completed timely briefing, and Plaintiff did not file a reply.  (D.E. 7, 10.)

   **B. Factual History[2]**

Plaintiff was born on January 10, 1965, in the Dominican Republic.  (R. 47, 53.)  Plaintiff has up to a fifth-grade education and previously worked as a hand packager for light fixtures.  (R. 50–51, 53–56.)  Plaintiff stopped working on or about October 2, 2016, following a hand injury.  (R. 51.)  Plaintiff returned to work in 2017 but stopped working again on or about December 23, 2017.  (R. 51, 419.)  Plaintiff alleges he stopped working full-time due to a variety of physical and mental health impairments.  (R. 389, 419.)  The following is a summary of the medical evidence in the record.

---

[2] Plaintiff's "Procedural History/Statement of Facts" in his moving brief is insufficient and a blatant disregard of Local Rule 9.1(e)(5)(c).  Local Rule 9.1(e)(5)(c) requires "a statement of facts with references to the administrative record," and Plaintiff provides only his procedural history.  Future non-compliant filings may result in sanctions, including dismissal.

    i.     **Left Hand Impairment**

On September 1, 2016, Plaintiff sustained an injury to his left index finger at work, reporting that a metal object fell on his hand. (R. 661–64.) Plaintiff sought treatment at Raritan Bay Medical Center from internist Dr. Gregorio Guillen, M.D., where an initial evaluation revealed a partial avulsion with an open fracture of the left index finger. (R. 661, 663.) Plastic surgeon Dr. George Smith, M.D., performed an immediate open reduction internal fixation surgery on Plaintiff. (R. 661–62.) Plaintiff was discharged on September 7, 2016. (R. 662.)

On September 26, 2016, Plaintiff returned to Dr. Smith for removal of the K-wire in his left index finger. (R. 601.) Following the procedure, there was an adequate reduction with mild tenderness and discomfort at the fracture site, but medical records note adequate stability. (*Id.*) Subsequent medical records do not indicate persistent complications or need for continued treatment related to Plaintiff's left finger fracture. (*See generally* R. 734–845.)

    ii.    **Diabetes and Pacemaker Implantation**

Medical records indicate that Plaintiff has a longstanding history of diabetes, dating back to 2005, for which he was prescribed oral medications before starting insulin in 2018. (R. 734–35, 737–38, 744–46, 758–59.) On July 6, 2017, Dr. Guillen noted that Plaintiff's most recent A1c was 9.5%, but Plaintiff denied any systemic complications and exhibited otherwise benign physical examination findings. (R. 744–46.)

On May 8, 2018, Plaintiff reported to the hospital with complaints of weakness, dizziness, syncope, chest pain, and vomiting. (R. 610–14, 618–19.) Upon examination, Plaintiff was diagnosed with complete heart block and diabetic ketoacidosis. (R. 608, 624). He received a permanent pacemaker, and was discharged to his home on insulin with instructions to closely monitor his blood sugar levels. (R. 608–09, 624–25.) Later that month, Plaintiff returned to Dr.

Guillen to report occasional chest pains and dizziness, but indicated that his blood sugar improved since beginning insulin. (R. 737.) When plaintiff returned to Dr. Guillen throughout 2018 and 2019, Dr. Guillen noted that Plaintiff's A1c levels remained elevated. (R. 880, 882). Plaintiff, however, mentioned to Dr. Guillen in December 2019 that he was "feeling well without any specific complaints." (R. 860.)

On July 23, 2018, Plaintiff visited cardiologist Dr. Rakesh Passi, M.D., for follow-up of his pacemaker placement. (R. 705–07.) On examination, Dr. Passi noted grade 1/6 systolic murmur, but also normal and bilaterally equal pulsations. (R. 706.) Dr. Passi also noted Plaintiff's clear lungs and no muscle fasciculations, atrophy, muscle weakness, or asymmetry. (R. 705–07.)

Plaintiff sought follow-up cardiac visits from Dr. Passi in early 2020. (R. 915, 920–23.) Plaintiff reported feeling well and denied symptoms of shortness of breath or chest pain, but complained of headaches and pain at his pacemaker site when lifting his arm. (R. 920.) Dr. Passi advised Plaintiff to continue his current medication regimen, and to consult with other medical professionals for his other complaints. (R. 922). Later in the year, Dr. Passi prescribed nitroglycerin tablets to Plaintiff for chest pain and shortness of breath, and advised him to go to the emergency room if symptoms worsened. (R. 911–13, 915.) Plaintiff returned to Dr. Passi on April 7, 2021, complaining of shortness of breath and occasional chest pain, including pain at his pacemaker site when sleeping. (R. 901.) Dr. Passi recommended additional diagnostic testing to rule out exacerbation of Plaintiff's coronary heart disease. (R. 903.)

iii. **Mental Impairments**

On June 1, 2017, Plaintiff presented to the George J. Otlowski, Sr. Center for Mental Health Care ("GJOSC") for an initial intake evaluation. (R. 554–67.) Plaintiff reported symptoms of poor sleep, exhaustion, irritation, low energy, no interest in doing anything, and depressed moods.

(R. 555.) The evaluation by mental health clinician, Barbara Nelson, LCSW, established that Plaintiff had insomnia, anxiety disorder, and mood disorder with depressive features. (R. 565–66.) Two months later, on August 21, 2017, Plaintiff returned to GJOSC for a psychiatric evaluation with Dr. Padmaja Annamaneni, M.D. (R. 568–71.) Dr. Annamaneni diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, and prescribed Risperdal and trazodone. (R. 570.) In December 2017, a discharge summary from GJOSC noted that it had lost contact with Plaintiff. (R. 572.)

    iv.    **Consultative Examinations**

On September 17, 2018, Plaintiff was seen for a psychological consultative examination by Dr. J. Theodore Brown, Ph.D., H.S.P.P. (R. 847–51.) Plaintiff indicated that he was not receiving mental health treatment, and denied any history of psychiatric hospitalizations. (R. 847.) Plaintiff reported symptoms of poor sleep, headaches, chest pain, decreased appetite, feeling depressed and sad due to financial stress, crying episodes, reduced energy levels, poor memory and concentration, anxiety manifested in pulling his hair, grinding his teeth, and picking sores, and hearing music playing in his head that others could not hear. (R. 848.) While Plaintiff exhibited pleasant and cooperative behavior, Dr. Brown also noted Plaintiff's slightly lethargic motor behavior; difficulty with interpreting proverbs; difficulty with memory exercises and serial sevens; and estimated below average intellectual functioning. (*Id.*) Dr. Brown opined that Plaintiff "should not be allowed to manage his own funds" due to a "learning disab[ility] and very likely cognitively suffering from neurocognitive disorder." (R. 850.)

On October 15, 2018, Plaintiff presented to Dr. Francky Merlin, M.D., for an internal medicine consultative examination. (R. 852–53.) Plaintiff described loss of vision in his right eye and pain in his left index finger. (R. 852.) Dr. Merlin noted that Plaintiff had no central vision in

the right eye, but had peripheral vision in all quadrants of the right eye, and 20/30 vision in the left eye. (R. 853.) Plaintiff exhibited inability to walk on his heels and decreased range of motion of the bilateral shoulders. (*Id.*) X-rays of Plaintiff's cervical and lumbar spine showed moderate narrowing of C6-C7 vertebrae, decreased lordosis of the lumbar spine, and mild-to-moderate posterior narrowing of L5-S1 intervertebral disc. (R. 856.)

    v.    **State Agency Physicians' Findings**

In 2018, state agency medical consultants reviewed the record and found, *inter alia*, that Plaintiff had no exertional restrictions, but some non-exertional postural and environmental restrictions.[3] (R. 93.) State agency psychologists found that Plaintiff was moderately limited in his ability to understand, remember, or apply information; maintain attention and concentration for extended periods; and adapt to changes in the work setting. (R. 91, 95–96.) Overall, the state agency psychologists found that Plaintiff could carry out simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain ordinary routine; and relate and adapt in simple work-like settings. (*Id.*)

    C.    **Hearing Testimony**

At the administrative hearing on May 6, 2021, Plaintiff was represented by counsel. (R. 45–83.) ALJ Lissek heard testimony from Plaintiff and an impartial vocational expert, Linda Vause ("VE Vause"). (*See generally id.*)

Plaintiff testified that following his work-related hand injury, he had surgery but "it ended poorly" and he continued to have pain in his left hand. (R. 57.) Plaintiff also testified that because of his pacemaker and diabetes, he occasionally has shortness of breath and chest pain when he

---

[3] In her review of the state agency's physical assessments of Plaintiff, ALJ Lissek found that "the substantial evidence of record available . . . supports a somewhat higher degree of restriction . . . . Thus, the State agency medical consultants' physical assessments are each considered only somewhat persuasive in making the findings herein." (R. 24–25.)

stands for over 15 minutes. (R. 58–59.) Plaintiff claimed that he is unable to see out of his right eye due to "blocked vision." (R. 59.) Additionally, Plaintiff stated that he had depression in the past but it improved with medication, while trouble with his memory and concentration persists. (R. 59–60.)

VE Vause testified that an individual with Plaintiff's vocational background and residual functional capacity ("RFC"), as assessed by ALJ Lissek, would not be capable of working Plaintiff's previous job as a hand packager. (R. 65.) VE Vause testified that there were unskilled jobs at the light exertional level in the national economy that a person with Plaintiff's age, education, work experience, and RFC could perform such as a marker, routing clerk, and photocopying machine operator. (R. 75.)

During the hearing, ALJ Lissek presented various hypotheticals to determine Plaintiff's capabilities in performing past relevant work. (*See* R. 65–81.) ALJ Lissek asked VE Vause to provide clarification on her answers to the hypotheticals, and Plaintiff's counsel asked VE Vause questions on cross-examination. (*Id.*) VE Vause responded to the questions accordingly. (*Id.*)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). Thus,

substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (internal quotation marks omitted) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal quotation marks omitted) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the

8

record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five-Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not

disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e) – (f), 416.920(e) – (f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A. The ALJ's Decision

On May 26, 2021, ALJ Lissek issued a partially favorable decision concluding that Plaintiff was not disabled between October 2, 2016, the alleged onset date, and January 10, 2020, when

Plaintiff's age category changed. (R. 27.) At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful employment since the alleged onset date. (R. 17–18.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; coronary artery disease; diabetes mellitus; hernia; depression; anxiety disorder; and learning disorder. (R. 18.)

At step three, ALJ Lissek explained that Plaintiff's impairments, individually and in combination, did not meet or medically equal the severity of any listing. (R. 18.) Based on the record, ALJ Lissek found that Plaintiff's spinal narrowing did not meet the requirements of Listing 1.16, lumbar spinal stenosis resulting in compromise of the cauda equine.[4] (R. 18–19). In addition, the ALJ found that Plaintiff did not satisfy the conditions under Listings 2.02, 2.03, and 2.04, because Plaintiff's vision records did not evince "loss of central visual acuity, contraction of the visual field, or loss of visual efficiency in the better, left eye of the degree contemplated by those listings."[5] (R. 19.) As for Listing 4.04, the ALJ found that Plaintiff's cardiac medical evidence "does not adequately establish sign- or symptom-limited exercise tolerance test findings, ischemic episodes, or angiographic evidence of arterial narrowing."[6] (*Id.*) Further, the ALJ stated

---

[4] For this listing, Plaintiff would have to prove motor, sensory, and reflex loss, as well as a documental medical need for a hand-held assistive device. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.16.

[5] Listing 2.02 applies to loss of central visual acuity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.02. Listing 2.03 refers to contraction of the visual field in the better eye. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.03. Listing 2.04 describes loss of visual efficiency, or visual impairment, in the better eye. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 2.04.

[6] Listing 4.04, ischemic heart disease, requires symptoms due to myocardial ischemia, while on a prescribed treatment regimen. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.04. Listing 4.04 also requires a "(A) Sign- or symptom-limited exercise tolerance test"; "(B) Three separate ischemic episodes"; or medical imaging of "(C) Coronary artery disease." *Id.*

that the medical evidence does not meet the criteria under Listing 4.05 for recurrent arrhythmias.[7] (*Id.*)

ALJ Lissek considered the severity of Plaintiff's mental impairments pursuant to Listings 12.04, 12.06, and 12.11.[8] The ALJ found that Plaintiff has moderate limitations in "understanding, remembering, or applying information,"[9] but his mental impairment(s) did not satisfy the applicable mental disorder listings. (*Id.*) ALJ Lissek found that, "while the claimant exhibited some evidence of below average intellectual functioning and difficulty with memory upon mental status examination, there is no indications of any profound issues . . . ." (*Id.*) Additionally, the ALJ noted that Plaintiff, "except as limited by his physical symptoms, [] is able to perform self-care tasks and daily activities." (R. 20.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff, since the alleged onset date:

> [H]ad the residual functional capacity to perform light work . . . except he: can use his hands for handling and fingering constantly; can climb ramps and stairs frequently; can climb ladders, ropes, or scaffolds, or stoop occasionally; must avoid concentrated exposure to extreme heat and cold, fumes, odors, dusts, gases, and poor ventilation; can do work that does not involve peripheral vision; can do near acuity frequently; depth perception occasionally, and color vision occasionally; can understand and perform simple instructions; can have occasional contact with supervisors and occasional face-to-face contact with the general public; and can deal with occasional changes in a routine work setting."

(R. 20.)

---

[7] The criteria for recurrent arrhythmias require a showing of "uncontrolled episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory electrocardiography, or by other appropriate medically acceptable testing." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 4.05.

[8] Listing 12.04 describes the requirements for depressive, bipolar, and related mental disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Listing 12.06 describes the requirements for anxiety and obsessive-compulsive disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. Listing 12.11 describes the requirements for neurodevelopmental disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.11.

[9] Listings 12.04, 12.06, and 12.11 list the ability to "understand, remember, or apply information" as criteria under which an extreme limitation or marked limitation in mental functioning may exist.

At step four, the ALJ determined that someone with Plaintiff's RFC could not perform Plaintiff's previous job as a hand packager. (R. 26.) At step five, ALJ Lissek relied on VE Vause's testimony to explain that Plaintiff could perform work that existed in significant numbers in the national economy such as a marker, assembler, or photocopy machine operator. (R. 27.) ALJ Lissek therefore concluded that Plaintiff was not disabled under the Act prior to January 10, 2020. (R. 27.) On January 10, 2020, the date of which Plaintiff's age category changed, the ALJ found that Plaintiff became disabled and has continued to be disabled through the date of her decision.[10] (*Id.*)

**B.     Analysis**

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 7.) Plaintiff first asserts that the ALJ's hearing was improper and non-neutral. (D.E. 7 at 8–21.) Second, Plaintiff alleges that the ALJ's decision disregards substantive evidence in the administrative record to support a finding of Plaintiff's disability between October 2, 2016, and January 10, 2020. (D.E. 7 at 21–37.) This Court considers the arguments in turn and finds each unpersuasive.

**A.**

Plaintiff contends that the ALJ's hearing was conducted with bias "in a non-neutral and adversarial manner," *inter alia*, because ALJ Lissek's questions/hypotheticals presented to VE Vause and Plaintiff's counsel were purposed to achieve a "predetermined outcome" unfavorable to Plaintiff. (D.E. 7 at 11, 17.) Plaintiff's arguments are without merit.

---

[10] In evaluating disability, age is a contemplated vocational factor: "[i]f we find that you cannot do your past relevant work because you have a severe impairment(s), we will consider the same residual functional capacity assessment . . . together with your vocational factors (your age, education, and work experience) to determine if you can make an adjustment to other work. . . . If you cannot, we will find you disabled." 20 C.F.R. § 404.1520(g).

14

It is well-settled that due process is violated when a claimant applying for Social Security benefits "is deprived of the opportunity to present evidence to an ALJ in support of his or her claim, or where the ALJ exhibits bias or animus against the claimant." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 857–58 (3d Cir. 2007) (citing *Ventura v. Shalala,* 55 F.3d 900, 902–03 (3d Cir. 1995)). The Third Circuit has recognized that ALJs in Social Security hearings are expected to maintain a high degree of impartiality because "the absence in the administrative process of procedural safeguards normally available in judicial proceedings has been recognized as a reason for even stricter application of the requirement that administrative adjudicators be impartial." *See Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984). Nevertheless, a district court may not play a fact-finding role in Social Security cases, to include determining whether an ALJ conducted a hearing with bias against a plaintiff. *See id.* Accordingly, a district court's review of the Commissioner's findings on a bias claim necessitates that the claim was raised at a prior administrative level. *See* 20 C.F.R. § 416.1440 ("If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity."); *see also Ventura*, 55 F.3d at 902; *Davis v. Comm'r of So. Sec.*, 2016 WL 356075, at *4 (D.N.J. Jan. 28, 2016) ("Because Claimant raised the bias challenge for the first time before this Court, she is deemed to have waived her bias claim."); *Laver v. Comm'r of Soc. Sec.*, 2020 WL 7640536, at *3 (D.N.J. Dec. 22, 2020) (finding that the claimant's bias claim was waived for failing to assert bias at the administrative level).

Even assuming that Plaintiff did not waive the issue, an ALJ is presumed to be unbiased unless there is a specific showing for cause to disqualify. *See Schweiker v. McClure*, 456 U.S. 188, 195 (1982). The party making the allegation of bias has the burden of overcoming this presumption. *See id.* at 195–96. The party must show that the behavior of the ALJ was "so extreme

as to display clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551; *see also Johnson v. Comm'r of So. Sec.*, 2008 WL 699591 (D.N.J. Mar. 12, 2008) ("Displays of annoyance, impatience, dissatisfaction, or anger toward a party also do not form a basis for proving bias.").

Here, Plaintiff's arguments are without merit. Plaintiff never raised any bias claim or allegation against the ALJ at the administrative level. Moreover, a plain reading of the hearing transcript does not reveal any egregious act committed by the ALJ rising to the level of a bias claim, and reflects that Plaintiff was given an opportunity to appear at a full and fair hearing before the ALJ. (*See* R. 45–83.) Plaintiff's attorney was not prevented from representing his client. During the hearing, Plaintiff's attorney was permitted to present evidence to the ALJ, question the VE and Plaintiff, and conduct opening and closing statements. (R. 56–63, 70–82.) The record unequivocally demonstrates that Plaintiff was permitted to ask questions until Plaintiff rested his case. (R. 56–63.) As such, Plaintiff's argument is rejected.

**B.**

Second, Plaintiff asserts that the ALJ's RFC assessment is not supported by substantial evidence because it "arrive[s] without adequate rationale bridging the evidence to the RFCs." (D.E. 7 at 21.) Plaintiff further alleges that the ALJ's decision "offers [a] collection of conclusory statements which never quite refer to any evidence, articulate a function by function analysis or create a bridge between the recited evidence and the RFC findings." (D.E. 7 at 28.) This Court finds no basis to reweigh the evidence, and the ALJ's partial disability award based on Plaintiff's age of 55 is appropriate and supported by substantial evidence in the record.

When evaluating a Plaintiff's claim, an ALJ considers the persuasiveness of medical opinions and "will explain how [he or she] considered the supportability and consistency factors

for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision." 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(5). However, "[a]n ALJ need not defer to a treating physician's opinion about the ultimate issue of disability because that determination is an administrative finding reserved to the Commissioner." *Gantt v. Comm'r Soc. Sec.*, 205 F. App'x. 65, 67 (3d Cir. 2006) (citing 20 C.F.R. § 404.1527(e)). "[T]here is [also] no format to which an ALJ must adhere when giving h[is or her] reasoning so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, Civ. No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Importantly, the Third Circuit has held that an inconsistency between a plaintiff's daily living activities and a medical opinion is a legitimate basis to discredit the opinion. *See, e.g.*, *Hubert v. Comm'r of Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018); *Russo v. Astrue*, 421 F. App'x 184, 191 (3d Cir. 2011).

Plaintiff has pointed to no medical evidence that was overlooked concerning Plaintiff's functional limitations and impairments to support his position that the ALJ erred in determining his RFC assessment. Indeed, it is Plaintiff's burden to prove evidence of his disability, including his RFC. *See* 20 C.F.R. § 404.1512(a). "[C]ourts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r. of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). In assessing Plaintiff's RFC, the ALJ provided a sufficient narrative discussion of Plaintiff's entire medical record during the alleged period of disability. (R. 20–25.)

The ALJ fully articulated her reasoning in determining Plaintiff's RFC based on all relevant evidence, including medical records, medical source opinions, and Plaintiff's subjective complaints and description of his own limitations. (*Id.*) An ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his symptoms where the evidence

17

does not fully support those allegations, and "need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r of Soc. Sec*, 229 F. App'x 140, 147 (3d Cir. 2007) (citations omitted); *see also* 20 C.F.R. §§ 404.1529 and 416.929; *see also* Social Security Ruling 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). In this matter, ALJ Lissek explained that her RFC findings were based on "careful consideration of the evidence," where "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported . . ." (R. 21.) The ALJ considered all evidence in the record, including state agency medical physicians' functional assessments, to find that Plaintiff could perform light exertional work. (R. 20–25.) Thus, the ALJ articulated a meaningful rationale between the evidence and her determination of Plaintiff's RFC.

Reviewing the ALJ's decision and the medical record as a whole, it is clear that there is substantial evidence—*i.e.*, more than a mere scintilla of evidence—to support the ALJ's partially favorable decision. Prior to January 10, 2020, Plaintiff was capable of performing light exertional work, as opined by the treating and consultative physicians. This Court will therefore affirm the ALJ's decision.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that ALJ Lissek's factual findings were supported by substantial credible evidence in the record and that her legal determinations were correct. The Commissioner's determination is therefore **AFFIRMED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties